NOTE: This disposition is nonprecedential

# United States Court of Appeals
# for the Federal Circuit

---

**SARAH EMANUELE,**
*Petitioner,*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent.*

---

2011-3047

---

Petition for review of an arbitrator's decision by Michael E. Zobrak.

---

Decided: July 22, 2011

---

SARAH EMANUELE, of Cornwall, New York, pro se.

LARTEASE M. TIFFITH, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

---

Before BRYSON, LINN, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LINN.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

LINN, *Circuit Judge.*

Sarah Emanuele ("Emanuele") appeals the decision of Arbitrator Michael E. Zobrak, upholding a 25-day suspension from her position as an Air Traffic Controller Specialist at the Federal Aviation Administration ("agency") for making inaccurate statements on a pre-employment medical questionnaire. Because substantial evidence supports the arbitrator's decision, this court affirms.

## BACKGROUND

Emanuele was employed as an Air Traffic Controller Specialist with the agency in Memphis, Tennessee. As part of the pre-employment process, Emanuele was required to complete a medical history questionnaire, FAA Form 8500 ("the Form"), which the agency uses to determine whether the applicant may work in a safety sensitive position. Question 18 on the form, titled "Medical History," asked: "HAVE YOU EVER IN YOUR LIFE BEEN DIAGNOSED WITH, HAD, OR DO YOU PRESENTLY HAVE ANY OF THE FOLLOWING? Answer 'yes' or 'no' for every condition listed below." Condition b. listed "Dizziness or fainting spell" and included check boxes for yes or no. In her 2007 and 2008 forms, Emanuele had checked "no."

On January 7, 2009, Emanuele requested acceptance into the Voluntary Leave Transfer Program, through which "the unused accrued leave of one agency officer or employee may be transferred for use by another agency officer or employee who needs such leave because of a medical emergency." 5 C.F.R. § 630.901. To support her claim of a medical emergency, Emanuele submitted the letter of her physician, Dr. Rekha Pillai, describing an

office visit of December 18, 2008. In that letter, Dr. Pillai diagnosed Emanuele with "[s]evere vertigo, possibly secondary labyrinthitis." She also stated the following:

> [Emanuele] notes that she has had intermittent bouts of vertigo since she was 18 years old, which was the first time she developed the symptom. It was associated with sinus infection. The second attack was at age 21 when she had flu-like symptoms and at 23 she had been on a cruise and returned and developed severe vertigo. Her next attack was at age 25. Since then, she has not had any vertigo, except in summer of this year when she developed severe colitis related to clindamycin.

J.App'x at 72a.

On February 3, 2010, the agency proposed to suspend Emanuele for 30 days for "[failing] to provide complete and accurate information on FAA Forms 8500-8" and, unrelatedly, for making an irresponsible statement. Emanuele appealed the agency's decision through the National Air Traffic Controllers Association ("union"), alleging that Emanuele's suspension violated the collective bargaining agreement and the law. The union and the agency agreed to arbitration.

The arbitrator affirmed the agency's decision on the non-disclosure basis, but reversed the irresponsible statement basis. The arbitrator therefore reduced the suspension to 25 days.

Emanuele appealed and we have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703. *Johnson v. Dep't Vet. Affairs*, 625 F.3d 1373, 1376 (Fed. Cir. 2010).

## DISCUSSION

This court reviews an arbitrator's decision under the same standard of review as appeals from the Merit Sys-

tems Protection Board, affirming unless the arbitrator's decision is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* (quoting 5 U.S.C. § 7703(c)(1)-(3)). As the appeal here involves only matters of fact, this court applies the substantial evidence standard.

The arbitrator affirmed the agency's determination primarily on the basis of Dr. Pillai's original report detailing Emanuele's pre-employment history of vertigo, and Emanuele's failure to disclose such history on the Form.

It is undisputed that Emanuele indicated on the Form that she had never in her life had dizziness or fainting spells prior to 2008. Because the agency's charge does not require an intent element, this dispute centers around whether she did indeed experience dizziness or fainting spells prior to 2008.

Dr. Pillai's December 18, 2008 report provides evidence that Emanuele did in fact experience vertigo prior to filling out the Form.[1] As the arbitrator determined, "[t]here is no question that Dr. Pillai reported [that Emanuele] had incidents of vertigo at the age of 18, 21, 23 and 25," J.App'x at 9a, all of which were prior to her filling out the Form in 2007. The arbitrator further determined that it was more likely that Emanuele did indeed experience vertigo before 2008 because when first

---

[1]    Doctor Pillai's report did not appear to draw any distinction between Emanuele's earlier bouts of vertigo, which she alluded to only in shorthand form, and her current bout of vertigo, which she described in more detail. Accordingly, there is little reason to attach any real significance to her reference to "dizziness" in connection with the 2008 instance and not in connection with her previous incidents.

confronted with the inconsistency between Dr. Pillai's report and her representation in the Form, she did not argue that Dr. Pillai had made a mistake. Instead, she contended that dizziness and vertigo are different things so there was no need to report her vertigo in answer to a question that asked only about dizziness.

Emanuele disputes the initial report on three bases. First, she argues that vertigo is not dizziness, citing Taber's Cyclopedic Medical Dictionary, which states that "Vertigo is sometimes *inaccurately* used as a synonym for dizziness" (emphasis added). As the agency correctly concluded in its letter to Emanuele, "one could have dizziness without having vertigo," but it is "highly unlikely that one could have vertigo without some form of dizziness." There is substantial evidence in the record to support the determination implicit in the Arbitrator's decision that vertigo is accompanied by dizziness. For example, Tim Nelson, the official who signed the Proposal of Suspension and Decision Letter, testified as follows in regards to Emanuele's response:

> Q: Now, she has something that she's admitted as part of her response that details vertigo, correct?
>
> A: Correct.
>
> Q: In her definition, do you see the word "dizziness"?
>
> A: No, I do not.
>
> Q: Have you looked up other definitions?
>
> A: I did research on the Internet. I've researched in medical dictionaries. Had conversations with the flight surgeon concerning vertigo. Every definition I read has dizziness in it, or wording that would imply dizziness.

Q: What about this definition [in Emanuele's response]?

A: False feeling of motion is [sic] that the room is spinning, or off balance; may result in falling. It's not saying "dizzy", but that's dizzy to me.

J.App'x at 19a(63:3-21). *See also* J.App'x at 17a(56:8-24) ("Q: In your experience or understanding, is it possible to have vertigo without some form of dizziness? A: No, sire."); J.App'x at 30a(140:9-18) ("Q: Just because dizziness is not synonymous with vertigo, does that mean that dizziness is not a symptom of vertigo? A: In all the reading that I did, in the encyclopedia and the Internet, dizziness was more often than not listed as a symptom. And if it wasn't listed under the name 'dizziness', there were conditions that described what I would assume as to being dizzy."). Moreover, while *Taber's Cyclopedic Medical Dictionary* says that vertigo and dizziness are not *identical*, it also describes vertigo as *including*: "The sensation of moving around in space (subjective vertigo) or of having objects move about the person (objective vertigo)." J.App'x at 123a. This definition provides substantial evidence for the Arbitrator's finding that Emanuele's history of vertigo included sensations that should have been reported on a form asking about "Dizziness or fainting spell[s]."

Second, Emanuele argues that Dr. Pillai submitted what appear to be two nearly identical addenda to the record, both dated June 22, 2009, which override the original report. One reads as follows:

Ms. Sarah Emanuele has written a letter to me concerned about what she thinks is incorrect history. She states that she did not have attacks of vertigo since she was 18 years old. She apparently had the flu and she has had sinus infections since

> then. I am unsure if she states that these were not associated with vertigo or she felt that the vertigo was related to the sinus infection and was not an independent symptom. She states that she developed vertigo four days after she became ill with colitis. . . . She also states that she did not have vomiting with her vertigo, and on her return visit, she states that she had some dizziness and visual blurring but no vertigo. These corrections are being added to her medical records.

The second addendum omits "I am unsure . . . was not an independent symptom." The arbitrator gave the addenda "[l]ittle weight," concluding that the earlier report was more credible, and that the "wording found in the addendums reveals that the physician was merely reporting what [Emanuele] had recently told her. Those later comments reflect [Emanuele's] position offered in an effort to deflect the impact of Dr. Pillai's initial reporting." While the medical history in the first report was made with an eye towards an accurate diagnosis, the latter report was not so intentioned. Moreover, the addenda do not indicate Dr. Pillai's acknowledgment that he made a mistake in the initial report, and are written to suggest disbelief—i.e. Emanuele is "concerned about what she thinks is incorrect history." While it is certainly possible that Dr. Pillai was simply mistaken in the first report, this court may not substitute its own judgment for that of the arbitrator, and the arbitrator's decision to rely on the earlier rather than the later report is supported by substantial evidence.

Third, Emanuele argues that Dr. Pillai made other mistakes in her initial report which cast doubt on the veracity of the remaining statements of Emanuele's medical history. While they may cast some doubt, the

mistakes do not negate the significance of the initial report as substantial evidence.

Emanuele makes several more arguments apart from contesting Dr. Pillai's initial report. First, she argues that it has been definitively established that she does not have "meniers disease," which she represents is "the only persistent chronic lifelong medical condition that causes frequent attacks of vertigo." However, the agency's charge could be sustained if Emanuele had suffered even a single instance of dizziness or vertigo prior to her representation on the Form that she had never suffered dizziness. Moreover, meniers disease is not the only possible cause of dizziness.

Second, Emanuele argues that she was never provided instructions in filling out the form. It is unclear why this fact should reveal a lack of substantial evidence for the arbitrator's decision. More importantly, no instructions appear to be necessary in light of the unambiguous nature of the form: "HAVE YOU EVER IN YOUR LIFE BEEN DIAGNOSED WITH, HAD, OR DO YOU PRESENTLY HAVE ANY OF THE FOLLOWING? Answer 'yes' or 'no' for every condition listed below."

Third, Emanuele argues that the arbitrator erroneously found a nexus between her failure to disclose information and the efficiency of the service. As support, she argues that vertigo is not a disqualifying medical condition because she later reported it and did not lose her medical clearance. This argument is meritless. The arbitrator determined that "the proper completion of the medical forms used by the Agency for air traffic controllers is of the utmost importance. The inability to perform the duties even if due to medical reasons can endanger the safety of the flying public." The Form is intended as a means of evaluating an applicant's fitness for safety sensitive positions. Even if vertigo is not always a disqualifying medical condition, the agency's ability to properly evaluate an applicant's fitness based on accurate

information about the applicant's physical and medical condition certainly impacts the efficiency of the service. Moreover, there is substantial evidence to support the nexus between an air traffic controller's vertigo, which (as noted by Dr. Pillai) makes Emanuele more dizzy when she is "looking at moving objects," and her ability to effectively perform her duties.

Fourth, Emanuele argues that the arbitrator failed to consider the *Douglas* factors in determining the proper penalty. *See Douglas v. Vet. Admin.*, 5 M.S.P.B. 313 (1981). We note that Emanuele has not herself analyzed the *Douglas* factors as they apply to her case. Moreover, the *Douglas* factors need not "be applied mechanically," nor must every irrelevant factor be considered in every case, or explicitly stated to be irrelevant. *Nagel v. Dep't of Health & Human Servs.*, 707 F.2d 1384, 1386 (Fed. Cir. 1983). The agency, in its notice of suspension "considered the nature and seriousness of the offense," noted that the "lack of disclosure brings your trustworthiness and integrity into question," determined that Emanuele's actions "created a situation in which management had to modify assignments, and adjust work schedules," and found that Emanuele had received notice "of the importance of providing accurate information on government forms." In addition, the agency considered the mitigating factor of Emanuele's emotional distress. Though the agency's Table of Penalties provided for a 60-day suspension, Emanuele was only given a 30-day suspension, which was thereafter reduced by the arbitrator. Emanuele has no cause to complain that the penalty was not appropriate to her misconduct.

Finally, Emanuele makes a number of miscellaneous arguments, including contesting the agency's delay in implementing her suspension, and contesting the agency's failure to give her notice of the potential penalties for failure to disclose all relevant information. We have considered these arguments and find them meritless.

CONCLUSION

For the reasons stated above, this court affirms Emanuele's 25-day suspension for failing to provide complete and accurate information on a medical disclosure form.

# AFFIRMED

COSTS

Each party shall bear its own costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**SARAH EMANUELE,**
*Petitioner,*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent.*

---

2011-3047

---

Petition for review of an arbitrator's decision by Michael E. Zobrak.

---

O'MALLEY, *Circuit Judge,* dissenting.

In its review of the arbitrator's decision, the majority finds that, as a factual matter, "it is highly unlikely that one could have vertigo without some form of dizziness." Maj. Op. at 5. The arbitrator, however, made no such finding. Though the parties vigorously debated the relationship between vertigo and dizziness – an issue central to the propriety of Ms. Emanuele's suspension – the arbitrator left this fact dispute unaddressed. Because it is neither our role as a circuit court, nor within our jurisdictional competence, to resolve such fact disputes in the first instance, I must, respectfully, dissent. *See Church of Scientology v. United States Postal Serv.*, 700 F.2d 486,

490 (9th Cir. 1983) (remanding with instructions to "resolve the factual issues raised by the parties" because appellate courts do "not have the jurisdictional competence to resolve factual disputes").

As the majority notes, this case turns on whether Ms. Emanuele experienced dizziness or fainting spells prior to 2008. One of Ms. Emanuele's primary arguments before the arbitrator was that the agency failed to prove that she experienced dizziness because having a history of vertigo does not mean she had a history of dizziness. The agency pointed to no direct evidence that Ms. Emanuele had dizziness. Instead, its theory was that, because Dr. Pillai reported a history of vertigo, one could infer that Ms. Emanuele had dizziness. Thus, to sustain the charge, the arbitrator needed to find that the agency proved, by preponderant evidence, that, because Ms. Emanuele had vertigo, she also had dizziness. The arbitrator made no such finding. Instead, he apparently *presumed* that "vertigo" and "dizziness" are one in the same.[1]  *See, e.g.*, Arbitrator's Decision at 9 ("Grievant has been less than agreeable in releasing medical documentation and failed to offer credible evidence that would support that she did

---

[1]    Another possibility is that the arbitrator's decision was premised on a misreading of Dr. Pillai's report. The arbitrator appears to have interpreted the report as stating that Ms. Emanuele had a history of both vertigo and dizziness. *See* Arbitrator's Decision at 4 ("Dr. Pillai described the Grievant's medical history as containing bouts of vertigo, dizziness, blurred vision and nausea."). Ms. Emanuele, however, disputes this interpretation of Dr. Pillai's December 18, 2008 report, and the section of the report titled "HISTORY of PRESENT ILLNESS" describes prior bouts of vertigo, but not dizziness. JE2 at 11. Dr. Pillai's report references dizziness only in a section describing Ms. Emanuele's symptoms in December 2008, which was well after Ms. Emanuele's purported misrepresentations. *Id.*

not have a history of vertigo/dizziness as initially reported by Dr. Pillai."). Consequently, he never resolved the factual dispute regarding the relationship between vertigo and dizziness.

Ms. Emanuele renews this argument on appeal, and the majority opinion addresses it as follows:

> [Ms. Emanuele] argues that vertigo is not dizziness, citing Taber's Cyclopedic Medical Dictionary, that states that "Vertigo is sometimes *inaccurately* used as a synonym for dizziness." As the agency correctly concluded in its letter to Emanuele, "one could have dizziness without vertigo," but it is "highly unlikely that one could have vertigo without some form of dizziness." There is substantial evidence in the record to support the determination implicit in the arbitrator's decision that vertigo is accompanied by dizziness.

Maj. Op. at 5 (citing JE4 (Agency's April 2, 2010 Decision Letter)). The factual "determination" referred to by the majority, however, was made "implicitly" only in the sense that the agency could not prevail unless it persuaded the arbitrator to resolve the fact dispute raised by Ms. Emanuele in its favor. Because the arbitrator upheld Ms. Emanuele's suspension, the majority concludes that the arbitrator must have determined that "vertigo is accompanied by dizziness." As explained above, however, the arbitrator failed to acknowledge – let alone settle – the fact dispute regarding the relationship between vertigo and dizziness. Thus, because the arbitrator did not resolve this fact in the agency's favor, the majority takes it upon itself to do so, and justifies its fact-finding by gleaning an "implicit" factual determination from the arbitrator's ultimate legal conclusion. In doing so, moreover, the principal authority the majority cites for the

relationship between vertigo and dizziness – a relationship that the agency was required to prove – is Tim Nelson, the agency official who proposed Ms. Emanuele's suspension and made the ultimate decision to suspend her. Mr. Nelson's statements, however, do not demonstrate that, as an *empirical* matter, it is "highly unlikely that one could have vertigo without some form of dizziness." Rather, he simply stated that, based on a medical dictionary's definition of vertigo and "a simple internet search," "[he] f[ou]nd it highly unlikely that one could have vertigo without some form of dizziness." JE4 at 1. As Ms. Emanuele points out, however, this conclusion is based on a misquotation of the definition of vertigo. While Mr. Nelson quoted Taber's Cyclopedic Medical Dictionary for the proposition that vertigo is "[s]ometimes used as a synonym for dizziness, lightheadedness, and giddiness," the actual dictionary entry states that: "Vertigo is sometimes *inaccurately* used as a synonym for dizziness, lightheadedness, or giddiness." *See Taber's Cyclopedic Medical Dictionary* at 2327.

Based on its own factual finding that "it is highly unlikely that one could have vertigo without some form of dizziness" – a finding premised upon agency statements made without medical support – the majority affirms the arbitrator's decision upholding Ms. Emanuele's suspension. "[W]e are a court of review," however, "not of first view." *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Because the arbitrator never addressed the parties' dispute over the relationship between vertigo and dizziness, and it is not our role, as circuit judges, to engage in fact-finding, I would remand the case to permit the arbitrator to consider the question in the first instance.